IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY VERGASON,<br><br>                Petitioner,<br><br>    vs.<br><br>J. LIZARRAGA, Warden, Mule Creek State Prison,<br><br>                Respondent. | No. 2:17-cv-01996-JKS<br><br>MEMORANDUM DECISION |

Timothy Vergason, a state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Vergason is in the custody of the California Department of Corrections and Rehabilitation and incarcerated at Mule Creek State Prison. Respondent has answered, and Vergason has not replied.

I. BACKGROUND/PRIOR PROCEEDINGS

On June 26, 2015, Vergason was charged with committing two lewd acts—one each against half-sisters J. and F. (Counts 1 and 2, respectively)—and an act of sexual penetration against F. (Count 3). On direct appeal of his conviction, the California Court of Appeal laid out the following facts regarding the charges against Vergason and the evidence presented at trial:

> J. (born in 1996) and her half sister F. (born in 1999) lived with their mother and her boyfriend in Weaverville. Starting in 2003, the boyfriend regularly beat the girls, but their mother would do nothing to stop it. The girls often spent weekends at [Vergason's] house; they referred to [Vergason] as an uncle. While at [Vergason's] house, he touched both girls. At this time, J. was seven and F. was five.
> In 2004, there was a sleepover at [Vergason's] house. J. "caught [her] sister sitting on top of [Vergason] and then [J.] was told to get on top as well," but J. "ran into the living room, where [she] was forced to touch" his penis. When J. initially caught F. sitting on top of [Vergason], his pants were down to his knees, and F. did not have any clothes over her genitals. He was holding her hips and rocking her back and forth. On

other occasions, [Vergason] "felt [J.] up." She did not tell her mother because "it made [J.] feel guilty and dirty."

[Vergason] also molested F. on more than one occasion. Once, he told her to straddle him and then "attempted to make an insertion, but as [she was] a five-year-old, it became just skin to skin contact." In a later incident, [Vergason] put his fingers inside her vagina.

F. was removed from her mother's house at age seven. She did not tell her adopted mother about [Vergason's] sexual abuse until age 12, when the adoptive mother received a phone call from a detective about the molest and then talked to F. to confirm it.

J. eventually disclosed the molestations in June 2011 when interviewed by Denise Hinchcliff, a child molestation investigator with the Lake County District Attorney's Office. Hinchcliff had interviewed several hundred other child molest victims and assisted in several hundred more. She was an expert in "the interviews of victims of sexual assault and the special characteristics common in victims of sexual assault and knowledge of sexual assault investigations." Based on her experience in those interviews, disassociation is common, which is when the victim is reluctant to talk and displays a flat affect. Some molest victims say they do not remember the assault, but later admit to her they remember, or sometimes the opposite is true (they admit the molest to her but then recant after being removed from the house of their custodial parent). The reasons for initial denials vary from being afraid to tell because they had been sworn to secrecy or because they believed something bad may happen to their families. When she interviewed J., J. crossed her arms a lot and did not show a lot of emotion. J. at first just said that "something had happened." Only later in the interview did she describe the molestations in detail. Hinchcliff had "just a couple" hours of training on child sexual abuse accommodation syndrome. That training did not play as much of a role in her forming opinions about common characteristics of sexual assault victims as her actual participation in interviews of sexual assault victims.

On September 7, 2011, Detective Jeremy Ammon of the Trinity County Sheriff's Department interviewed [Vergason]. The DVD of the interview was played for the jury during Detective Ammon's testimony, and the jury was also given a transcript of that interview. The prosecutor asked Detective Ammon: "During your interview with [Vergason] on September 7, 2011, did [he] apologize for his acts against the two victims in this case?" Detective Ammon answered, "Yes, he did." The transcript reflects the following apology: "Yes, I apologize. For allowing them to umm carry on and umm," which [Vergason] then explained was oral sex between the two victims, not involving him, that he failed to stop. According to Detective Ammon, "an apology would indicate some type of admission." Detective Ammon repeatedly asked if something inappropriate happened with the two girls, and [Vergason] never said the girls must be lying. [Vergason] "talked about playing house and kissing with the victims. He talked about the victims performing oral sex on each other as he watched." He thought that F. "wanted to go farther [with him] . . . [like] having sex like the victims' parents did." He "mention[ed] that he did hurt them, but he wasn't specific on details of what we were

2

talking about." "He's had a difficulty knowing where to draw the line and he's been working on that for over 30 years."

Dr. Anthony Urquiza, a professor and director of the child abuse treatment program in the pediatrics department at the University of California at Davis Medical Center, testified as an expert on child sexual abuse accommodation syndrome. The concept of child sexual abuse accommodation syndrome originated from a doctor in 1983 to educate therapists about typical behavior exhibited by child sexual abuse victims and to dispel any misperceptions about how child victims might react. There are five parts to child sexual abuse accommodation syndrome: secrecy, helplessness, entrapment and accommodation, delayed and unconvincing disclosure, and recantation. Secrecy is when victims keep quiet because it is not safe to talk about being sexually abused, possibly because there is an ongoing relationship with the abuser, the abuser will do something bad to the victim, or the victim may even get blamed. Helplessness is when victims feel there is nothing they can do or should do about the abuse because it is being perpetrated by someone who is bigger, stronger, and of more authority than the victim. Entrapment and accommodation are coping mechanism victims use to manage their feelings about the abuse. One coping mechanism is dissociation, which is when victims disconnect from their feelings about the abuse and remain emotionless when discussing the molest with therapists. Another coping mechanism is refusal to talk about the molest, thinking, "if I cannot talk to anybody about this, if I can just get past it, that is the best thing for me to do." Delayed and unconvincing disclosure is the concept that when reporting abuse, children first "test[ ] the waters. And if the response [from the adult who is listening] comes back supportive, then they tell more and more about what happened." At first, the listener "shouldn't expect a disclosure to be very clear and articulate. There may be a first version, a third version, they may make errors and mistakes in how they describe things." Finally, recantation is analogous to retraction.

*People v. Vergason*, No. C081080, 2017 WL 712637, at *1-2 (Cal. Ct. App. Feb. 23, 2017).

At the conclusion of trial, the jury found Vergason guilty as charged. The trial court sentenced Vergason to two consecutive terms of 15 years to life imprisonment for the lewd acts under the one strike law,[1] plus an additional 6 consecutive years for the sexual penetration.

Through counsel, Vergason appealed his conviction, arguing that: 1) the trial court erred in admitting expert testimony that Vergason apologized for his acts against the victims and that apology was an admission; 2) the trial court erred in permitting expert testimony on child sexual

---

[1] CAL. PENAL CODE § 667.61(b) (providing that a person convicted of a lewd and lascivious act "shall be punished by imprisonment in the state prison for 15 years to life").

abuse accommodation syndrome ("CSAAS") after the People had already presented an expert covering the same matters; and 3) the trial court erred in sentencing Vergason to two terms under the one strike law because he lacked notice of the one strike allegations on the lewd acts. The Court of Appeal unanimously affirmed the judgment against Vergason in its entirety in a reasoned, unpublished opinion issued on February 23, 2017. *Vergason*, 2017 WL 712637, at *5. Vergason filed a counseled petition for review in the California Supreme Court, raising his claims that the trial court erred in admitting expert testimony as to Vergason's apology and unlawfully sentenced him to two life terms under the one strike law. The petition was summarily denied on May 10, 2017.

Vergason then timely filed a *pro se* Petition for a Writ of Habeas Corpus to this Court on September 20, 2017. Docket No. 1; *see* 28 U.S.C. § 2244(d)(1)(A).

## II. GROUNDS/CLAIMS

In his *pro se* Petition before this Court, Vergason asserts two grounds for relief, which he raised before the state courts on direct appeal. First, Vergason argues that the trial court violated his rights to due process by permitting the prosecutor to elicit expert testimony that Vergason apologized for his acts against the victims and that apology was an admission. He additionally contends that the trial court unlawfully sentenced him to two consecutive life terms because he lacked notice of the one strike allegations on the lewd acts counts.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision." *Id.* at 412. The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state

5

court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). A summary denial is an adjudication on the merits and entitled to deference. *Harrington v. Richter*, 562 U.S. 86, 99 (2011). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

Vergason has not replied to Respondent's answer. The relevant statute provides that "[t]he allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true." 28 U.S.C. § 2248; *see also Carlson v. Landon*, 342 U.S. 524, 530 (1952). Where, as here, there is no traverse filed and no evidence offered to contradict the allegations of the return, the court must accept those allegations as true. *See Phillips v. Pitchess*, 451 F.2d 913, 919 (9th Cir. 1971).

IV. DISCUSSION

Ground 1.      Evidentiary Error

Vergason first argues that the trial court violated his rights to due process by admitting expert testimony that Vergason apologized and the apology was an admission. During Detective Ammon's testimony, the prosecutor asked: "During your interview with [Vergason] on September 7, 2011, did [he] apologize for his acts against the two victims in this case?"

6

Detective Ammon answered, "Yes, he did." The detective further explained that "an apology would indicate some type of admission."

On direct appeal, the Court of Appeal held that Vergason had forfeited his federal due process challenge because counsel failed to object on that ground at trial. *Vergason*, 2017 WL 712637, at *2. Counsel did, however, make an evidentiary objection for lack of foundation and improper subject of expert witness testimony. *Id.* at *3. With respect to that claim, the Court of Appeal agreed that Vergason "is correct that whether [he] apologized and whether an apology is an admission were not the proper subject of expert witness testimony." *Id.* The appellate court consequently concluded that the trial court abused its discretion in admitting it, but nonetheless determined that the error was harmless. *Id.*

Because the state appellate court found Vergason's federal due process claim forfeited under California's contemporaneous objection rule, that claim is procedurally defaulted from federal habeas review. *Coleman*, 501 U.S. at 729-30 (a federal court will not review a claim if the state court's rejection of the claim rests on a state law ground that is independent of the federal question and adequate to support the judgment). The Ninth Circuit has repeatedly recognized and applied the California contemporaneous objection rule in affirming denial of a federal habeas petition on grounds of procedural default where there was a complete failure to object at trial. *See, e.g.*, *Inthavong v. Lamarque*, 420 F.3d 1055, 1058 (9th Cir. 2005); *Paulino v. Castro*, 371 F.3d 1083, 1092-93 (9th Cir. 2004).

Moreover, Vergason's claim based on the state evidentiary issue does not constitute a due process violation. To the extent Vergason claims that the trial judge abused his discretion in allowing the testimony, such claim is not cognizable on habeas review. Although the Ninth

7

Circuit has suggested that an abuse of discretion may also amount to a constitutional violation, *see Schell v. Witek*, 218 F.3d 1017, 1025 (9th Cir. 2000) (en banc), the Supreme Court has never held that abuse of discretion is an appropriate basis for granting federal habeas relief.[2] Indeed, quite to the contrary, the Supreme Court has strongly suggested that, while abuse of discretion is an appropriate standard on direct review, in a federal habeas proceeding it is not. *Renico*, 559 U.S. at 772-73 ("It is not even whether it was an abuse of discretion for her to have done so–the applicable standard on direct review. The question under the AEDPA is instead whether the determination of the Michigan Supreme Court that there was no abuse of discretion was "an unreasonable application of . . . clearly established Federal law." (quoting § 2254(d)(1))). A state court's evidentiary ruling, even if erroneous, is grounds for federal habeas relief only if it renders the state proceedings so fundamentally unfair as to violate due process. *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir.2009).

Here, Vergason fails to show that any state court error was so fundamentally unfair to rise to the level of a due process violation. Notably, the record shows that the DVD of the interview was played for the jury, and the jury was given a transcript of the interview. The jury was therefore able to assess Vergason's apology for itself, and it therefore cannot be said that Vergason was denied a fair trial. Consequently, Vergason is not entitled to relief on this claim. *See Drayden v. White*, 232 F.3d 704, 710 (9th Cir. 2000) (a state court's evidentiary ruling, even

---

[2] At one time, the Ninth Circuit viewed a state court ruling to be "objectively unreasonable" if it amounted to a clear error. *Van Tran v. Lindsey*, 212 F.3d 1143, 1152-54 (9th Cir. 2000). This is the test the Ninth Circuit uses in reviewing a trial court decision under the abuse of discretion standard. *United States v. Ressam*, 679 F.3d 1069, 1086 (9th Cir. 2012) (en banc). The Supreme Court noted *Van Tran's* statement of the test and expressly rejected it as inappropriate under the AEDPA. *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003) (clear error standard is insufficiently deferential to state courts).

if erroneous, is grounds for federal habeas relief only if it renders the state proceedings so fundamentally unfair as to violate due process); *Spivey v. Rocha*, 194 F.3d 971, 977-78 (9th Cir. 1999); *Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991).

Ground 2.      <u>Sentencing Error</u>

Vergason additionally contends that the trial court violated his due process rights by sentencing him to two consecutive life terms on the lewd acts convictions under the one strike law. According to Vergason, the People failed to properly allege the applicable one-strike circumstances that would potentially subject him to multiple indeterminate life terms. The Court of Appeal considered and rejected this claim on direct appeal as follows:

> [Vergason] contends the trial court unlawfully sentenced him to two consecutive life terms for the lewd acts under the one strike law because he had no notice that the multiple victim allegation applied to more than one count, as it was alleged only with respect to F. in the sexual penetration charge. As the trial court concluded, [Vergason] had adequate notice, so the court could lawfully impose a 15–year-to-life sentence for each lewd act under the one strike law.
> In making his argument, [Vergason] relies on *People v. Mancebo* (2002) 27 Cal.4th 735. In *Mancebo*, "the narrow question presented" was whether the fact of gun use, which had already been properly pled and proved as a basis for invoking one strike sentencing, could be used instead as a sentence enhancement under Penal Code section 12022.5, subdivision (a), while substituting the proven but not pled fact of multiple victims, all without prior notice. (*Mancebo*, at pp. 738–739, 749.) *Mancebo's* general principle is that a defendant has a due process right to fair notice of the factual allegations that will be invoked to impose a sentence enhancement or otherwise increase the punishment for the charged crimes. (*Mancebo*, at p. 747.)
> There was no such notice problem here. The pleadings put [Vergason] on notice that he would be subject to a multiple victim one strike allegation on the lewd act charges. The People charged [Vergason] with committing a lewd act against two victims: J. in count one and F. in count two. Following each of these counts, the information set forth special allegations (enumerated one and two) under the one strike law, specifying as to each count "special allegation . . . sex crimes—aggravating circumstances . . . within the meaning of Penal Code sections 667.61(j)(2) and (e)." While the (j)(2) allegation did not end up being applicable because it was enacted after [Vergason's] crimes were committed, the allegation did place [Vergason] on notice that (e) was also being charged, which included subdivision (e)(4) as follows: "The defendant has been convicted in the present case or cases of committing an offense . . . against more

9

than one victim." (Pen. Code, § 667.61, subd. (e)(4).) In addition, at the end of the information, the People also alleged as special allegation three, "It is further alleged, within the meaning of Penal Code section 667.61(b) and (e), as to the defendant's *actions* that the following *circumstances* apply: The defendant has committed an offense specified in PC 667.61(b)/(e)(4)." (Italics added.) It is reasonable to interpret this last special allegation (special allegation three) as alleging that the lewd act charges would be subject to the one strike enhancement, as the only basis for the section 667.61, subdivision (e)(4) multiple victim "circumstances" based on [Vergason's] "actions" would be the lewd acts he committed against J. and F.—acts alleged in counts one and two—and not the unlawful sexual penetration against F. alleged in count three. This reading is also reflected in the filled-in verdict forms, as the jury found true allegations as to the lewd act charges that [Vergason] committed a lewd act against more than one victim "within in the meaning of Penal Code section 667.61(b)/(e)(4)." Thus, unlike in *Mancebo*, the People here put [Vergason] on notice that he would be subject to the one strike law for the lewd act charges if it was proved and found true that he committed the charged lewd acts against the two victims.

*Vergason*, 2017 WL 712637, at *4.

Vergason fares no better on federal habeas review. It is clearly established federal law that a criminal defendant has a Sixth Amendment right to be informed of any charges against him, and that a charging document, such as an information, is the means by which such notice is provided. *Gautt v. Lewis*, 489 F.3d 993, 1004 (9th Cir. 2007) (citing *Cole v. Arkansas*, 333 U.S. 196, 201 (1948)). To determine whether a defendant has received fair notice of the charges against him, a reviewing court looks first to the information. *See James v. Borg*, 24 F.3d 20, 24 (9th Cir.), *cert. denied*, 513 U.S. 935 (1994); *Lincoln v. Sunn*, 807 F.2d 805, 812 (9th Cir. 1987). The principal purpose of the information is to provide the defendant with a description of the charges against him in sufficient detail to enable him to prepare a defense. *See James*, 24 F.3d at 24; *United States v. Lane*, 765 F.2d 1376, 1380 (9th Cir. 1985).

Here, the Court of Appeal was not unreasonable in concluding that "[t]he pleadings put [Vergason] on notice that he would be subject to a multiple victim one strike allegation on the lewd act charges." *Vergason*, 2017 WL 712637, at *4. On the record before this Court, it cannot

be said the information at issue was constitutionally deficient under *Miller v. Stagner*, 757 F.2d 988, 994 (9th Cir.1985) ("An information which tracks the applicable state statute affords defendants fair notice of the crime with which they are charged."). Moreover, Vergason's reliance on the state court decision in *Mancebo* is not persuasive. As thoroughly discussed by the state appellate court, *Mancebo* is factually distinguishable from the case at bar. *See Vergason*, 2017 WL 712637, at *4. Moreover, even if his argument that the lower court misapplied state supreme court precedent was correct, the Supreme Court has repeatedly held that federal habeas relief is unavailable for violations of state law or for alleged error in the interpretation or application of state law. *See Swarthout v. Cooke*, 131 S. Ct. 859, 861-62 (2011); *Estelle*, 502 U.S. at 67-68 (1991); *Peltier v. Wright*, 15 F.3d 860, 861-62 (9th Cir. 1994).

Accordingly, the state court's rejection of this claim was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, nor was it based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d). Vergason is not entitled to federal habeas relief on this claim either.

## V. CONCLUSION AND ORDER

Vergason is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the

issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)).  Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals.  *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: April 10, 2018.

    /s/James K. Singleton, Jr.  
JAMES K. SINGLETON, JR.  
Senior United States District Judge